IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BRAD BEGGS,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE INTERNAL REVENUE SERVICE,<br><br>        Defendant. | No.: _____<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## I. COMPLAINT

Plaintiff Brad Beggs ("Mr. Beggs") by and through his attorneys for his Complaint against Commissioner of the Internal Revenue Service ("Defendant") seeks refund of a penalty issued by Defendant in the 2016 tax year and states as follows:

## II. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1345 and 26 U.S.C. § 7422.

2. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because defendant is an employee of an agency of the United States and the Plaintiff resides in this judicial district and no real property is involved in the action.

### III. PARTIES

3. Plaintiff, Brad Beggs, was and is at all times relevant herein, a resident of St. Louis County, Missouri. Mr. Beggs leads the appraisal practice of Development Strategies, a firm in which he has over 30 years tenure.

4. Defendant, Commissioner of the Internal Revenue Service, is an employee and representative of the Internal Revenue Service, a United States agency.

### IV. FACTS

5. On December 12, 2016, Mr. Beggs entered an agreement with Old Cleveland Properties, L.P. to begin his appraisal of the Worthington Yards historic conservation easement.

6. The appraisal was done to estimate the market value of the property for purposes of income tax reporting.

7. Worthington Yards is a mixed-use, historic rehabilitation and development of the original George Washington warehouses on Johnson Court in the Historic Warehouse District of Cleveland, Ohio. It is located at 725 Johnson Court and consists of four historic buildings.

8. Mr. Beggs' appraisal was completed on February 13, 2017 in a 92-page report. The date of valuation was set as of October 7, 2016.

9. The appraisal was prepared in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice ("USPAP") and in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The appraisal was also completed in compliance with published Internal Revenue Service regulations governing valuations of preservation and conservation easements and is a "qualified appraisal" per Reg. § 1.170A-13(c)(3).

11. The valuation of the conservation easement was calculated by taking the difference of the "before easement value" and "after easement value." Mr. Beggs used the Cost and Income Capitalization Approaches to assess the before easement value. He used a Sales Comparison Approach and Income Capitalization Approach to assess the after-easement value. Each of these approaches were reasonable and accurate means of valuation given the context of the easement and according to the standards of the USPAP.

12. Mr. Beggs found the highest and best use before the easement to be construction of a 17-story vertical addition containing 326 apartment units worth $33,390,000.

13. The Pinnacle, a new condominium tower built atop an existing building directly across from Worthington Yards as well as other high-end apartments being considered in nearby construction supported Mr. Beggs' conclusion as to the established best use of the property.

14. For the after-easement value, Mr. Beggs found the highest and best use to be the 98-unit loft apartment property as was then proposed worth $3,960,000.

15. Mr. Beggs in his appraisal concluded rents would average $1.55 per square foot for the rehabilitated portion of the building and averaged $1.96 per square foot for the newly constructed portion.

16. New properties in Downtown Cleveland at the time exceeded rents of $2.20 per square foot. For example, The Beacon is a high-rise apartment building five blocks from Worthington Yards that was built over an existing five-story

parking garage after Mr. Beggs' appraisal was issued. The lowest rent in that building for an 824 sq. ft. 1-bedroom unit was $2.13 per square foot.

17. Mr. Beggs' final assessed valuation of the historic conservation easement was $29,430,000.

18. Mr. Beggs conceded that there was a two percent ($611,665) error in the valuation due to a miscalculation in values for the tax abatements; however, the conservative estimates of his rents prevented such errors from invalidating the final valuation.

19. On November 21, 2019, Brian Flynn of the I.R.S. completed an appraisal review report that concluded that the highest and best use of the property was valued at $5,893,000 and the after-easement value was $4,448,000, giving the easement a final value of $1,445,000.

20. October 27, 2020, Howard Kanter of the I.R.S. completed another appraisal review report. The report purports to be "limited to determination of whether or not the preservation easement value in the Beggs report is more likely than not correct" and more specifically, to "examination of the income approach relating to the value of the subject property's hypothetical proposed improvements." The report concluded that the before value Mr. Beggs calculated was incorrect and as a result, the fair market value of the easement is more likely than not incorrect.

21. December 1, 2020, I.R.S. sent Mr. Beggs a letter to inform him that they were proposing assessment of a penalty against him based on the aforementioned appraisal review reports.

22. On February 22, 2021, Defendant issued Plaintiff a penalty under I.R.C. § 6695A in the amount of $31,250.00. The penalty is based on the Defendant's assertion that Plaintiff made a gross valuation misstatement within the

meaning of I.R.C. § 6662(h). That is to say the I.R.S. believes that Mr. Beggs made a valuation that was 200 percent or more of the amount that they determined to be the correct amount.

23. September 16, 2021, the I.R.S. Office of Professional Responsibility issued Mr. Beggs a letter notifying him of "Allegations of Circular 230 Misconduct." The basis for these allegations was the historic conservation easement valuation Mr. Beggs made. The Office of Professional Responsibility asserted a failure to exercise due diligence; giving false or misleading information; and giving a false opinion, knowingly, recklessly, or through gross incompetence.

24. On February 18, 2022, Mr. Beggs with counsel attended a conference with the I.R.S. in which Brian Gilroy gave the final disposition of the matter.

25. Mr. Gilroy relayed that the I.R.S. concluded that because Mr. Beggs' appraisal did not analyze the soil to show that Mr. Beggs' highest and best before easement use would be physically possible and because Mr. Beggs did not confirm with the city of Cleveland that such a structure would be allowed to be constructed, the penalty would be sustained.

26. This was the first time the I.R.S. ever raised any "soil issue" related to Mr. Beggs' appraisal.

27. I.R.S. did not, however, confirm that the soil would not allow for this building to be constructed nor did it confirm with the city of Cleveland that such a building would be impermissible.

28. On March 11, 2022, I.R.S. Appeals Team Manager Tracy Kim sent a letter confirming resolution of the I.R.S. Appeals process stating that they have fully disallowed Mr. Beggs' claim.

29. I.R.S. reached a settlement agreement with Old Cleveland Properties in the dispute over its attempt to use the conservation easement appraisal for a

deduction.

30. A claim for refund of the penalty was duly filed with the Secretary.

31. The secretary denied that claim.

32. The denial of the claim was arbitrary, capricious, and contrary to law.

33. Mr. Beggs paid the penalty under protest.

## V. FIRST CAUSE OF ACTION – 2016 TAX YEAR PENALTY REFUND

34  Mr. Beggs incorporates by reference all of the allegations made in paragraphs 1 to 33.

35. Mr. Beggs in his October 7, 2016, valuation accurately appraised a conservation easement on the Worthington Yards property.

36.  Mr. Beggs' appraisal of the Worthington Yards conservation easement was more likely than not the proper value.

37. Because Mr. Beggs' appraisal was more likely than not the proper value, it is excepted from the 26 U.S.C. § 6695A(a), (b) penalty per 26 U.S.C. § 6695A(c).

38. Because Mr. Beggs' appraisal is excepted from the I.R.C. § 6695A penalty, he is entitled to refund of the penalty in the amount of at least $33,598.50.

## VI. SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

39. Mr. Beggs incorporates by reference all of the allegations made in paragraphs 1 to 38.

40. As a result of the I.R.S. concluding that Mr. Beggs' appraisal of the qualified conservation easement was not more likely than not the proper value, it alleged violations and threatened penalties under the Circular 230.

41. Mr. Beggs' appraisal was more likely than not the proper value and as such, no Circular 230 violations apply to him and no penalties should be imposed.

42. Mr. Beggs requests of the Court to declare that no further penalties shall be imposed, nor violations alleged against him based on his appraisal of the Worthington Yards property and conservation easement.

## VII. PRAYER FOR RELIEF

1. For the first cause of action, an award of money damages in an amount no less than $33,598.50, plus interest, prejudgment interest and attorneys' fees.

2. A finding that the decision by the I.R.S. to hold that Mr. Beggs made a substantial or gross valuation misstatement under 26 U.S.C. 6662(e), (h) was arbitrary and capricious.

3. A finding that the decision by the I.R.S. to impose on Mr. Beggs a penalty under 26 U.S.C. 6695A to be arbitrary and capricious.

4. A finding that Mr. Beggs' valuation of the conservation easement at $29,430,000 was more likely than not the proper value.

5. A finding that as a result of the previous findings in the prayers for relief, the I.R.S. was arbitrary and capricious in alleging Mr. Beggs violated the Circular 230.

DATED: March 8, 2024

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, PC
By */s/ Christopher M. Harper*_____

_____
John L. Mullen 42309 (MO)
E-mail: jmullen@fsmlawfirm.com

Christopher M. Harper 59000 (MO)
E-mail: charper@fsmlawfirm.com

8900 Ward Parkway
Kansas City, Missouri 64114
Telephone: 816.421.7100
Facsimile: 816.421.7915

BULLIVANT HOUSER BAILEY PC

By */s/ Wilhelm Dingler*
    Wilhelm Dingler 13474 (WA)*(pro hac forthcoming)*
    E-mail:   wilhelm.dingler@bullivant.com
    Antoine J. Smith 57968 (WA)*(pro hac forthcoming)*
    E-mail:   antoine.smith@bullivant.com

Attorneys for Plaintiff
Bullivant Houser Bailey, PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930
Facsimile: 206.386.5130

4886-0075-2727.1